CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
OCT 30, 2024
LAURA A. AUSTIN, CLERK
BY: s/B. McAbee
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JAMES SCEARCE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:23-cv-00012 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WILLIAM "VIC" INGRAM, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

In July 2024, a jury determined that Defendant William "Vic" Ingram ("Ingram"), the chairman of the Pittsylvania County Board of Supervisors ("the Board"), violated the constitutional rights of one of the citizens of the County, Plaintiff James Scearce ("Scearce"), by having Scearce forcibly removed from a Board meeting for voicing an opinion that was contrary to (and arguably critical of) Ingram. Such abuses are forbidden by the First Amendment, and those subjected to them are entitled to redress. The jury's verdict in this case, finding Ingram liable for violating Scearce's First Amendment rights and awarding nominal damages of $1.00, confirm those foundational principles. This case is now before the court on Scearce's request for attorney's fees and costs. Although the jury only awarded Scearce nominal damages, his request for fees will be granted in part.

**I.**

In contravention of the standard American rule that each party pays its own attorney's fees, Congress allows district courts to award reasonable attorney's fees and costs to the prevailing party in a case vindicating a party's civil rights under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1988(b) (granting the court discretion to award a "reasonable attorney's fee as part of the

costs" to a prevailing party in a suit under § 1983); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). To determine an attorney's fee award under § 1988(b), the court applies a three-step process:

> First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate . . . . Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

*McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014) (cleaned up). "Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). Accordingly, "winning nominal damages under 42 U.S.C. § 1983 allows for a recovery of attorney's fees under 42 U.S.C. § 1988 . . . ." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 604 n.6 (4th Cir. 2020).

## II.

The court first undertakes to determine the "lodestar figure."[1] Scearce's counsel has posited that he expended 94 hours on this case at a rate of $250 per hour. (*See* Mot. for Fees and Costs at 1 & Ex. 2 [ECF No. 51 & 51-2].) Ingram concedes that counsel's hourly rate of $250 is reasonable (Def.'s Mem. in Opp. to Mot. for Fees and Costs ¶ 36 [hereinafter "Def.'s Br."] [ECF No. 52]), but disputes the reasonableness of the hours expended.[2]

---

[1] Ingram concedes that Scearce is a prevailing party and is entitled to attorney's fees; he only disputes the amount that should be recoverable.

[2] Whether IngramA's argument comes under the first step in the analysis or the third, the court is not persuaded by his arguments in favor of a drastically reduced fee award.

"In calculating . . . [the] lodestar figure . . . , [the court is] guided by the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Information Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009) (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). Here, the majority of factors support affirming Scearce's proposed lodestar: 94 hours at $250/hour, or $23,500.

As noted above, the "time and labor expended" was eminently reasonable for a civil rights action that culminated in a two-day jury trial in federal court. While the issues in this suit were not necessarily complicated, the question of where the line between free speech and disruptive behavior lies can be a tricky one, as evidenced by Ingram's admission at trial that he *still* believes he did the correct thing by having Scearce removed and threatening him with criminal charges. The "opportunity costs" certainly weigh in favor of an award of fees, as 42 U.S.C. § 1988 was meant to incentivize representation in these types of cases where actual damages are negligible but the constitutional right at issue is of paramount *societal* importance. *See, e.g.*, *Omeish v. Kincaid*, No. 1:21-cv-35, 2024 WL 4356287, at *7 (E.D. Va. July 25, 2024) ("[T]he purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for

persons with civil rights grievances by incentivizing attorneys to represent parties with such grievances, including in close cases and in cases which do not involve monetary damages." (cleaned up)).

Ingram does not dispute the reasonableness of the hourly rate, so the court finds that $250/hour is a "customary fee for like work." *Accord Clark v. Coleman*, No. 4:17-cv-00045, 2020 WL 2105016, at *2 (W.D. Va. May 1, 2020) (collecting cases for the proposition and finding that an hourly rate of $350 is "appropriate for an uncomplicated civil rights case such as this"). As it relates to "time limitations imposed by the client or the circumstances," counsel represented that he accepted this case and was forced to refuse some appointments as a guardian *ad litem* where an hourly rate—albeit a lesser one—would have been guaranteed. In this case, although he had a fee arrangement with his client, the case was taken primarily on a contingency basis. (*See* Mot. for Fees and Costs at 10.) While Scearce's attorney does not specialize in constitutional litigation,[3] he does have experience and, in the court's estimation, performed at a level commensurate with an award of fees. Finally, the award granted herein is consistent with—and generally less than—fees awarded in similar cases. *See, e.g, Hudson v. Pittsylvania Cnty., Va.*, No. 4:11cv00043, 2013 WL 4520023, at *1 (W.D. Va. Aug. 26, 2013) (awarding attorneys' fees in the amount of $53,229.92 in an admittedly more complicated Establishment Clause challenge).

---

[3] In his affidavit, counsel represented that he drafts amicus briefs, often in the field of constitutional law, as contract work. He does not indicate the frequency of this work, nor does he attest that his practice regularly, or even sporadically, consists of litigating constitutional issues in federal court. (*See* Aff. of Rick Boyer p. 1–2, July 23, 2024 [ECF No. 51-4].)

To be sure, "the amount in controversy and the results obtained" weigh against an award of fees. As Ingram accurately points out, Scearce sought $250,000 and recovered only nominal damages. Moreover, Scearce claims that all he really wanted was an apology—which Ingram correctly points out he cannot obtain from a judgment in this court. But that factor is outweighed by the others, including "the undesirability of the case within the legal community in which the suit arose." Ingram was chairman of the Board of Supervisors, and the case concerned his alleged vindictiveness against someone with whom he had political disagreements. It does not strain credulity to suspect that many local attorneys would not want to invite Ingram's ire by taking Scearce as a client. Additionally, Scearce's counsel took a politically sensitive case and achieved what the court believes to be the only reasonable outcome, and he did so while maintaining a (relatively) streamlined case and reigning in a client that wanted this trial to be an airing of all his political disagreements with Ingram. Scearce's counsel did his level best to focus the case on the only issue that mattered—his client's constitutional right to free speech. Overall, the court is satisfied that his representation warrants the award granted herein.

Ingram counters that this was primarily a damages case, as "liability was never the central issue in the case." (Def.'s Br. ¶ 19.) Ingram's primary objection to the hours expended were that Scearce took depositions "which did not reasonably lead to any substantial difference in the outcome of the case on the merits." (*Id.* ¶ 25.) He contends the depositions were "largely irrelevant to the primary issue." (*Id.*) But that argument ignores his own testimony at trial. Although he claims *now* that liability was never reasonably in dispute, at trial he maintained

that he had done nothing wrong and, in fact, would take the same action again but for the inconvenience of being sued for his actions.

Ingram also challenges several specific claimed fees: 2 hours to prepare a one-page witness and exhibit disclosure (that was subject to objection); 5.5 hours "to address largely uncontested evidentiary issues raised in the defendants' [*sic*] motion *in limine*—including revising witness and exhibit lists"; and 3.5 hours "researching and preparing jury instructions and a response to the Court's order . . . that were identical to defendant's." (Def.'s Br. ¶¶ 26–28.)

Taking the issues in turn, the court is persuaded that each of these time entries was reasonable and appropriate under the circumstances. First, while two hours to prepare a one-page filing may sound excessive, such a filing often represents counsel's considered judgment on how to present his client's case, and the decision of who—and often who *not*—to call as a witness reflects myriad considerations. Second, the time spent responding to Ingram's motion *in limine* included responding to arguments to exclude extraneous information related to counsel's service on a county Board of Supervisors, information that counsel argued he "ha[d] not indicated such intention" to introduce. (Pl.'s Br. in Opp. to Def.'s Mot. *in Limine* p. 3 [ECF No. 30].) Moreover, that filing also included summaries of testimony that, while counsel conceded was inadvertently omitted from his prior witness list, was nevertheless fully within Ingram's possession. And finally, the importance of accurate and legally correct jury instructions, especially in a constitutional case where actual damages are often not apparent, cannot be overstated. Confirming that Ingram's proposed instructions accurately stated the

law could easily have taken competent counsel several hours to perform. The court will not decrease the lodestar figure for any of these reasons.

Ingram also argues that 31.5 hours were spent on depositions that "were improperly expected to be used at trial and served limited utility at trial." (Def.'s Br. ¶ 32.) While the court is not privy to conversations between the parties as to what, if anything, would be conceded and what would be contested, the court notes that Ingram did not stipulate to any of the testimony of the witnesses called, and the deposition of witnesses is a vital preparation tactic to ensure a smooth presentation of evidence at trial. While the depositions and witnesses may have served only "limited utility at trial," there is no indication that Scearce knew that prior to the depositions—nor could he have known what was or was not going to be necessary or useful to prove his case.[4] Under the circumstances, 31.5 hours on depositions that culminated in a two-day jury trial was not unreasonable.

Next, Ingram notes that Scearce's nominal-damages award of $1 was "250,000 times less than what he sought" (Scearce demanded $250,000 in his Complaint) and that Scearce's disparate recovery warrants a drastic reduction in the requested fees. (Def.'s Br. ¶ 29.) In support of this argument, he cites to *Maul v. Constan*, 23 F.3d 143 (7th Cir. 1994), where an award of nominal damages after a $100,000 demand justified denying the plaintiff's request for attorneys' fees. *See id.* at 146 ("An examination of the specific allegations made and the actual relief sought by Maul makes clear that this suit's primary purpose was to remedy plaintiff's own injuries and not to establish the rights of inmates generally."). Ingram's reliance

---

[4] The court accepts—and agrees—that the video of the meeting in question was likely sufficient on its own to establish Ingram's liability.

on this case is misplaced.[5] Although Maul was seeking redress only on his own behalf and not for inmates generally, it is clear that Scearce's victory sets a clear standard for the local government moving forward. It is no exaggeration to say that, although Scearce was the only one directly affected by Ingram's abuse of his authority, the public at large is benefitted when government officials' abuses are rebuffed and the right of the people to speak openly to—and critically of—their government is affirmed.[6] *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 14 (1976) ("The First Amendment affords the broadest protection to . . . political expression in order 'to assure (the) unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)); *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964) (noting the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open").

Finally, Ingram contends that the fee award should be reduced because "several hours at trial were lost because the plaintiff's friend interfered with the jury before trial." (Def.'s Br. ¶ 33.) But there is nothing to suggest that Scearce had any knowledge or responsibility for a third party's actions, and the court will not reduce the fee award for something entirely out of the parties' control. For all these reasons, the court finds that, for a constitutional claim in federal court that culminated in a two-day jury trial, a lodestar figure of 94 hours at $250/hour is reasonable.

---

[5] Notwithstanding that *Maul*, as a 30 year-old out-of-circuit precedent, is not binding on this court and would only be persuasive authority.

[6] The court is not persuaded that Scearce's goals were altruistic, however. It was clear from the start of this case that personal animus and petty political differences were the animating forces behind Scearce's suit. But that fact does not dissuade the court from its conclusion that the ultimate resolution of this suit served the citizens of Pittsylvania County in an important way, and *that* success warrants recovery of attorney's fees.

"After determining the lodestar figure, the 'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Robinson*, 560 F.3d at 244 (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008)). Here, Scearce brought an unsuccessful claim against the Board of Supervisors itself, and the court will not award fees for the time spent defending the claim against the Board. Both Ingram and the Board filed motions to dismiss, and counsel's records reflect that he spent four hours researching and responding to the motions and three hours to prepare, drive to, and defend against the motions. Accordingly, his requested award will be reduced by four hours to reflect the relative success of the motions.[7]

After calculating the loadstar and subtracting for unsuccessful claims, the court "then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Grissom*, 549 F.3d at 321 (cleaned up). "[T]he degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award . . . .'" *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 675 (E.D. Va. 2004) (quoting *Hensley*, 461 U.S. at 436)). For the reasons discussed above, and primarily for the importance of the vindication of the right at issue, the court is satisfied that 90 hours at $250/hour is an appropriate and reasonable award under the circumstances; no further reduction is warranted.

---

[7] The Board's motion to dismiss was granted, and Ingram's motion to dismiss was granted in part. (*See* Order, Sept. 19, 2023 [ECF No. 17].) To his credit, Scearce conceded that the false imprisonment claim against Ingram should be dismissed, but he successfully defended against all of Ingram's other arguments for dismissal. Although counsel represents that he already decreased the hours spent on those motions by approximately 50% (*see* Boyer Aff. p. 2–3), the court believes a further reduction is warranted. For one reason, counsel does not discount his time for travel; "[c]ourts routinely compensate attorneys for travel time, but at a reduced rate." *Stultz v. Virginia*, No. 7:13-cv-589, 2019 WL 4741315, at *8 (W.D. Va. Aug. 15, 2019), *report and recommendation adopted as modified*, 2019 WL 4740241 (W.D. Va. Sept. 27, 2019). For another, counsel's inclusion of claims against the Board of Supervisors required unnecessary expenditures by the opposing party to oppose what Scearce conceded was a frivolous claim.

## III.

For the forgoing reasons, the court will award attorney's fees to Scearce, the prevailing party, in the amount of $22,500. Costs will also be awarded in the amount of $1,914.75.[8]

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 30th day of October, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[8] "[U]nder § 1988, a prevailing plaintiff is a civil rights action is also entitled to recover 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Clark*, 2020 WL 2105016, at *5 (quoting *Wyatt v. Owens*, No. 7:14-cv-492, 2018 WL 10613184, at *13 (W.D. Va. Jan. 23, 2018)). Ingram has not challenged the requested award of costs, and the court finds that the request is reasonable and appropriate.